NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY A. TOCCI, : | |
| : | Civil Action No. 07-1341 (FLW) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| ANTIOCH UNIVERSITY AND : | |
| THE MCGREGOR SCHOOL OF : | |
| ANTIOCH UNIVERSITY, : | |
| : | |
| Defendants. : | |

**Wolfson**, **District Judge:**

Anthony A. Tocci ("Plaintiff") enrolled in Antioch University, located in Yellow Spring, Ohio, in September 1996. Plaintiff alleges that after fulfilling the requirements of a degree of Master of Arts in Conflict Resolution at The McGregor School of Antioch University and Antioch University (collectively, "Defendants" or the "University"), Defendants, through the actions and inactions of their administration, officers and employees, breached the educational contract and warranties with Plaintiff and, consequently, denied him the economic advantages that degree would bring. Defendants move the Court to dismiss this case for want of personal jurisdiction. In this decision, the Court concludes that it lacks jurisdiction to adjudicate Plaintiff's claims. However, the Court will transfer this case to the United States District Court for the Southern District of Ohio.

**Background**

Defendant Antioch University is an Ohio nonprofit corporation. It is an institution of higher education and operates several campuses; among them is The McGregor School of Antioch University. The McGregor School is located in Yellow Springs, Ohio. None of the campuses of the

University are located in New Jersey.[1]

Plaintiff is a New Jersey resident who lives in Hillsborough. His domicile during all relevant time to this litigation has been New Jersey. Plaintiff first learned of the University in nationally distributed magazines. Plaintiff states that he purchased from a book store three different publications in which the University either advertised or was listed: i) Writer's Digest; ii) U.S. News & World Report; and iii) Newsweek. Plaintiff also states that he obtained information about the University on an online website maintained by the University. After initially reviewing the information about the University, Plaintiff mailed a request card seeking for the University's brochure. Subsequently, the University sent an Applicant Handbook to Plaintiff and contacted Plaintiff, via telephone, to discuss his interest in the University's conflict resolution program. In fact, according to Plaintiff, the University contacted him five times. Thereafter, Plaintiff applied to the University in September 2006.

Plaintiff was accepted on September 18, 1996, and, thereafter, he enrolled in the University. To receive his degree of Master of Arts in Conflict Resolution, Plaintiff had to earn a minimum of 60 credits but he was allowed to design a degree with more than 60 credits. The University's faculty directly delivered 31 of the 60 credits. For the remainder of the credits, Plaintiff was required to complete an Individual Learning Component ("ILC") part of the degree. The ILC was a supervised independent studies program whereby Plaintiff designed his course of studies and was free to take classes from any institution and any format he selected; for example, courses can be taken in professional workshops, seminars, supervised tutorials or universities. In addition to the credits,

---

[1] Since the Court did not conduct a evidentiary hearing, all of Plaintiff's allegations relevant in assessing personal jurisdiction will be accepted as true. See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Plaintiff was required to submit a thesis. The University allowed a five-year period for all students, including Plaintiff, to complete their requirements under the degree.

Initially, Plaintiff spent one month in Ohio to receive some of the credits for his degree. He later spent over thirty-two months in New Jersey completing the rest of the requirements of his degree by attending classes at Rutgers University, the State University of New Jersey, mediation training courses at the municipal courts of Newark and Irvington, New Jersey, and four certificate programs in New Jersey. These courses allowed Plaintiff to complete his ILC, which he had designed.

Plaintiff alleges that, at first, the University fraudulently billed him over $9,000.00, which he did not pay, and, thus, the University froze his academic record for over five years. However, the University, subsequently, corrected the billing error and released Plaintiff's academic records. Plaintiff further alleges that because the University negligently removed his credits from his transcript and failed to provide a professor to facilitate his thesis, he was prevented by the University from obtaining his degree in the five-year period. Due to this alleged improper conduct on the part of the University, Plaintiff alleges that he lost both employment and educational opportunities.

Plaintiff initiated the instant action in this Court based on diversity jurisdiction. He asserts two counts in his Complaint. He alleges, in his breach of contract claim, that "Defendants breached their contract with the Plaintiff and its express and implied warranties through and by their failure to perform and take necessary and appropriate actions in the course of Plaintiff's pursuit of his degree, and by preventing Plaintiff from completing his academic requirements." Compl. at ¶ 4. Plaintiff further alleges, in his negligence claim, that Defendants negligently denied Plaintiff "to proceed with his academic requirements as a result of Defendants' failures and inabilities to correctly

account for the tuition, fee and costs, paid by Plaintiff for his pursuit of the degree of Master of Arts in Conflict of Interest." Compl at ¶ 22. Pursuant to 28 U.S.C. § 1332(a), Plaintiff claims that the damages he suffered are greater than $75,000.00.

### Discussion

This Court has subject matter jurisdiction because Plaintiff is a citizen of New Jersey, the University is an Ohio corporation, and the amount in controversy exceeds $75,000.00. See 28 U.S.C. §§ 1332, 1441; Nat'l S.S. Co. v. Tugman, 106 U.S. 118, 121 (1882). However, with respect to personal jurisdiction, once challenged, Plaintiff bears the burden of establishing personal jurisdiction. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). Nonetheless, since this Court did not hold an evidentiary hearing, Plaintiff need only establish a prima facie case of personal jurisdiction and Plaintiff is entitled to have his allegations taken as true and all factual disputes drawn in his favor. Miller Yacht Sales, Inc. v. Smit, 384 F.3d 93, 97 (3d Cir. 2004).

Under Fed. R. Civ. P. 4(k), a district court typically exercises personal jurisdiction according to the law of the state where it sits. See Fed. R. Civ. P. 4(k)(1)(A). In this instance, the New Jersey long-arm statute applies, and it specifically allows and extends New Jersey's jurisdictional reach to the fullest limits permitted by the U.S. Constitution, subject only to due process of law. Osteotech, Inc. v. Gensci Regeneration Sci., Inc., 6 F.Supp. 2d 349, 352 (D.N.J. 1998) (citing Charles Gendler & Co. v. Telecom Equipment Corp., 102 N.J. 460, 469 (1986)). Accordingly, in determining whether personal jurisdiction exists, under the Due Process Clause, the inquiry is whether Defendants have "certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)(internal quotation omitted). Applying New Jersey's long arm

statute, the Court next turns to whether it has general or specific jurisdiction over Defendants.

*General Jurisdiction*

The Court may assert personal jurisdiction over Defendants either through general jurisdiction or specific jurisdiction. See Helicopters Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). General jurisdiction allows a court to assert personal jurisdiction over an out-of-court defendant when "that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum." Mellon Bank P.S.F.S. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). The assertion of general jurisdiction over non-forum related activities is proper when the defendant has engaged in "systematic and continuous" activities in the forum state. Helicopteros, 466 U.S. at 414-16.

It appears that Plaintiff relies on Defendants' advertisements in nationally circulated magazines (i.e. Writer's Digest; U.S. News & World Report and Newsweek) and a passive online website to establish general jurisdiction. However, publication of a page on a website, without more, is not an act by which a party purposefully avails itself of the privileges of conducting business in the forum state. Machulsky v. Hall, 210 F.Supp. 2d 531,539 (D.N.J. 2002); see Desktop Tech., Inc. v. Colorworks Repro. & Design, No. 98-5029, 1999 U.S. Dist. LEXIS 1934, at *3 (E.D. Pa. Feb. 25, 1999); see also Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542 (3d Cir. 1985). Plaintiff simply asserts that Defendants maintain an online website to advertise their programs. Without more, Defendants' website is merely a passive advertisement which is not an act by which Defendants purposefully availed themselves in New Jersey. Similarly, advertisements in nationally circulated magazines, not specifically targeted in New Jersey, do not constitute sufficient contacts with the forum state. Gehlin, 773 F.2d at 542 (held that the New York Times and Wall Street

Journal are non-Pennsylvania newspapers with international circulations, and advertising in them does not constitute contacts with the forum state). Indeed, none of the magazines Plaintiff cited were specifically targeted in New Jersey, nor does Plaintiff contend that they were. Accordingly, Defendants have not availed themselves continuously or systematically of conducting business in New Jersey by advertising online and in nationally circulated magazines.

*Specific Jurisdiction*

The inquiry as to which specific jurisdiction exists has three parts. First, Defendants must have "purposefully directed [their] activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). Finally, if the prior two requirements are meet, the Court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

At the threshold level, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Physical entrance is not required. See Burger King, 472 U.S. at 476. But what is necessary is a deliberate targeting of the forum. O'Connor v. Sandy Lane Hotel Co., Ltd., No. 05-3288, 2007 U.S. App. LEXIS 17932, at *7 (3d Cir. Jul. 26, 2007). Thus, the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. See Hanson, 357 U.S. 253. Further, contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself. See Gehling, 773 F.2d 542-43. Moreover, the jurisdictional nexus must also be the result of intentional conduct by the defendant and not merely "random, fortuitous, or attenuated

contacts." Amberson Holdings v. Westside Sotry Newspaper, 110 F.Supp.2d 332, 334 (D.N.J. 2000)(internal quotation omitted).

In the present case, Plaintiff relies on Defendants' telephone conversations with Plaintiff regarding the conflict resolution program and credits that Plaintiff received by taking classes and programs in New Jersey to demonstrate that Defendants have intentionally and purposefully availed themselves in New Jersey. Plaintiff has asserted no other facts to establish Defendants' purposeful conduct. The Court finds that the Defendants' conduct, as alleged by Plaintiffs, is insufficient for the Court to justify an exercise of personal jurisdiction over Defendants.

Plaintiff requested information from the University after seeing the University's advertisements in nationally circulated magazines; in response, the University mailed information, including an application, to Plaintiff and called him several times to discuss the program. The University was merely responding to actions taken by Plaintiff. Then, Plaintiff mailed the completed application to Ohio. In response, Plaintiff was accepted. See Mellon Bank, 983 F.2d at 556 (the Third Circuit held that telephone communications or mail sent by a defendant do not trigger personal jurisdiction if they do not show purposeful availment). Moreover, the classes and courses Plaintiff took in New Jersey were pursuant to his own selections when he designed his ILC. The University did not require Plaintiff to take these classes in New Jersey or any other forum. More importantly, Plaintiff does not contend, nor does the record reflect, that the courses and classes taken by Plaintiff were administered by the University. In fact, Plaintiff conceded that he took courses at other educational institutions. Therefore, Plaintiff is attempting to base jurisdiction on the results of his own unilateral actions, rather than on the conduct of the University.

The second part of the minimum contacts analysis requires courts to evaluate those contacts

in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.  Here, traditional notions of fair play and substantial justice strongly militate against holding that Defendants are subject to service of process in New Jersey simply by responding to information requested by prospective students.  See Rodi v. Southern New England School of Law, 255 F.Supp. 2d. 346, 351 (D.N.J. 2003) (quoting Severinsen v. Widener Univ., 338, N.J. Super. 42, 54 (App. Div. 2001)).  Indeed, the court in Rodi found that subjecting a nonprofit educational institution to jurisdiction in every state into which it grants requests for information  is patently unfair because courts would be placing an "unreasonable burden on [the institution's] recruitment efforts and would eventually lead to the result that smaller universities could only accept in-state applicants." Rodi, 255 F.Supp. 2d. at 351.  In weighing these factors, in addition to the insufficiency of the contacts presented here, the Court concludes that it lacks specific and general jurisdiction over Defendants.

*Transfer Venue*

Alternatively, Plaintiff requests the Court to transfer this action to the United States District Court for the Southern District of Ohio.  Pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) , the Court will permit the transfer of this case to the District Court in Ohio in the interests of justice.  See 28 U.S.C. § 1404(a).  Furthermore, because Plaintiff brought this case in the incorrect forum, it is appropriate for the Court to transfer it to the forum where it could have originally been brought.  See 28 U.S.C. § 1406(a); see also Gehling, 773 F.2d at 544 (District Court's finding that it did not have jurisdiction over the defendant does not prevent the case from being transferred to the forum where it could have originally been brought).

**Conclusion**

      For the foregoing reasons, the Court finds that there is no personal jurisdiction over Defendants, but in lieu of dismissal, the case shall be transferred to the United States District Court for the Southern District of Ohio.

                                              /s/Freda L. Wolfson
                                              Freda L. Wolfson, U.S.D.J.

Date: August 14, 2007